NO. 22-10276

───────────────────────────────

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

───────

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FRANCISCO JAVIER MELGOZA,

Defendant-Appellant.

───────
───────

Appeal from the United States District Court
for the Eastern District of California
Honorable Jennifer L. Thurston, District Judge
Presiding

───────
───────

APPELLANT'S OPENING BRIEF

───────
───────

Devin Burstein
Warren & Burstein
501 West Broadway, Suite 240
San Diego, CA 92101
(619) 234-4433
Attorney for Defendant-Appellant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ..........................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

BAIL STATUS ...............................................................................2

STATUTORY AND REGULATORY PROVISIONS ...............................2

ISSUE FOR REVIEW .......................................................................2

STATEMENT OF THE CASE ...............................................................3

SUMMARY OF ARGUMENT ...............................................................7

ARGUMENT ...................................................................................8
The district court erroneously denied Mr. Melgoza's motion to suppress
the evidence obtained from a warrantless search of his bag ...................8
    A.    Standard of review .................................................8
    B.    The warrantless search was unconstitutional.....................10
    C.    On this record, the government cannot meet its burden to
        justify the search under an exception to the warrant
        requirement ........................................................11
        1.    Because the record on the essential issue is
            undeveloped, the Court should remand to the district
            court for factual findings and analysis in the first
            instance ........................................................12
        2.    On this record, there is no appicable exception to the
            warrant requirement ......................................15
            a.    Consent .............................................15
            b.    Search incident to arrest .....................18
            c.    Probation search ...............................20

CONCLUSION .............................................................................27

i

CERTIFICATE OF RELATED CASES ................................................. 28

CERTIFICATE OF COMPLIANCE

ADDENDUM

# <u>TABLE OF AUTHORITIES</u>

## Federal Cases

*Ace Novelty Co. v. Gooding Amusement Co.*,
  664 F.2d 761 (9th Cir. 1981) ............................................................... 14

*Arizona v. Gant*,
  556 U.S. 332 (2009) ...................................................................... 11, 18

*California v. Acevedo*,
  500 U.S. 565 (1991) ............................................................................. 19

*Dennis v. United States*,
  339 U.S. 162 (1950) ............................................................................. 13

*Diouf v. Mukasey*,
  542 F.3d 1222 (9th Cir. 2008) ...................................................... 14, 15

*Hemphill v. New York*,
  142 S. Ct. 681 (2022) ............................................................................ 9

*Illinois v. Lafayette*,
  462 U.S. 640 (1983) ............................................................................. 26

*Muehler v. Mena*,
  544 U.S. 93 (2005) ............................................................................... 16

*Murray v. United States*,
  487 U.S. 533 (1998) ............................................................................. 11

*Riley v. California*,
  573 U.S. 373 (2014) ............................................................................. 10

*United States v. Brown*,
  996 F.3d 998 (9th Cir. 2021) ............................................................... 26

*United States v. Cabrera*,
  222 F.3d 590 (9th Cir. 2012) ............................................................... 10

*United States v. Chadwick*,
  433 U.S. 1 (1977) ................................................................................. 19

*United States v. Chavez-Valenzuela*,
  268 F.3d 719 (9th Cir. 2001) ............................................. 16, 17, 18, 24

*United States v. Guzman-Padilla*,
  573 F.3d 865 (9th Cir. 2009) ................................................................. 9

*United States v. Job*,
  871 F.3d 852 (9th Cir. 2017) .......................................................... 20, 21

*United States v. Knights*,
   534 U.S. 112 (2001) ............................................................................18
*United States v. Lara*,
   815 F.3d 605 (9th Cir. 2016) ......................................................*passim*
*United States v. Lopez-Cruz*,
   730 F.3d 803 (9th Cir. 2013) ..............................................15, 16
*United States v. Mejia*,
   69 F.3d 309 (9th Cir.1995) ........................................................26
*United States v. Wahid*,
   614 F.3d 1009 (9th Cir. 2010) .....................................................9
*United States v. Wanless*,
   882 F.2d 1459 (9th Cir. 1989) ...................................................26
*United States v. Williams*,
   846 F.3d 303 (9th Cir. 2017) ......................................................9
*United States v. Wilson*,
   13 F.4th 961 (9th Cir. 2021) ......................................................12
*United States v. Wright*,
   625 F.3d 583 (9th Cir. 2010) ..............................................13, 14
*United States v. Young*,
   573 F.3d 711 (9th Cir. 2009) ......................................................27
*Walter v. United States*,
   447 U.S. 649 (1980) ....................................................................26

## Federal Statutes

18 U.S.C. § 922(g)(1) .........................................................................5
18 U.S.C. § 3231 ................................................................................2
28 U.S.C. § 1291 ................................................................................2

## Federal Rules

Fed. R. App. P. 4(b) ...........................................................................2
Fed. R. Crim. P. 11(a)(2) ....................................................................7
Fed. R. Crim. P 12(d) ........................................................................14

iv

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | C.A. No. 22-10276 |
| Plaintiff-Appellee, | D.C. No. 21-cr-00192-JLT<br>Eastern District of California,<br>Fresno |
| v. | Appellant's Opening Brief |
| FRANCISCO JAVIER MELGOZA, | |
| Defendant-Appellant. | |

## **<u>INTRODUCTION</u>**

If you follow the wrong directions, chances are you will arrive at the wrong destination. The same principle applies to legal analysis.

Here, the district court followed a flawed Fourth Amendment analysis and unsurprisingly reached an erroneous result. The court failed to analyze the warrantless search of Mr. Melgoza's bag, which led to all the evidence against him. This Court, therefore, should reverse the denial of Mr. Melgoza's motion to suppress and remand for the district court to undertake the correct analysis in the first instance.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over the criminal offenses under 18 U.S.C. § 3231. The district court filed a final, appealable judgment and commitment order, 1-ER-8, and Mr. Melgoza filed a timely notice of appeal. 1-ER-110; *see* 28 U.S.C. § 1291; Fed. R. App. P. 4(b). This Court has jurisdiction over a timely appeal from a final order entered in the Eastern District of California. *See* 28 U.S.C. §§ 1291, 1294.

## BAIL STATUS

Mr. Melgoza is in custody with a projected release date of January 18, 2028.

## STATUTORY AND REGULATORY PROVISIONS

Copies of pertinent statutes and regulations appear in the attached addendum.

## ISSUE FOR REVIEW

Whether the district court erred in denying Mr. Melgoza's motion to suppress evidence obtained by the government during a warrantless search of his bag.

2

## STATEMENT OF THE CASE

Mr. Melgoza was riding his motorcycle down Golden West Avenue in Shafter, California.  1-ER-2.  As he neared the intersection with N. Shafter Avenue, a security camera recorded him stopped and sitting on his motorcycle at the curb.  1-ER-3.  After a few seconds, Mr. Melgoza begins to move the motorcycle forward toward a stop sign.  He is seen repeatedly putting his left foot down, which makes it appear he is walking the motorcycle.  1-ER-3.  While straddling the motorcycle, he walks it forward a few additional steps, passes the stop sign, and turns right at the corner.  1-ER-4.  He then moves out of frame.  1-ER-3-4.

A few seconds later, the video captures a police car driving down the same street before turning right at the same corner.  1-ER-4.  There is no recording of what happened next.  1-ER-4.

According to the police report, however, the officer believed Mr. Melgoza failed to make a complete stop at the stop sign.  1-ER-35, 50. Based on that alleged traffic violation, the officer "pulled behind Melgoza with the intent to stop him[.]"  1-ER-50.  Instead, according to the officer, Mr. Melgoza stopped on his own and got off his motorcycle.  1-ER-30, 50.

3

The officer then "immediately turned [his] rear overhead red and blue lights to avoid Melgoza from possibly getting struck by passing vehicles." 1-ER-30. In the officer's version, "I got out of my patrol vehicle and asked Melgoza if he was okay and he said, 'Yes.' I asked Melgoza if he was having an issue with his motorcycle and he said he believed his battery had died. While speaking to Melgoza, I noticed he had an electronic ankle monitor on his left ankle." 1-ER-30.

"I asked Melgoza if he was on any type of probation and he said, 'Yes,' I asked what he was on probation for and Melgoza stated for narcotics." 1-ER-30. "I asked Melgoza if I could search him and he said yes." 1-ER-30. During the search, "I noticed [Mr. Melgoza] had a grey . . . chest bag centered in the front torso area of his chest. For officer safety I removed the bag from his chest and set it on the ground next to me due to the possibility of the bag containing any weapons. After completing my search of Melgoza, I picked up the bag that Melgoza had strapped to his chest." 1-ER-30.

"As Melgoza turned he saw I had the bag in my hand and spontaneously stated, 'I'm going to be honest with you. You're going to

4

find a gun and drugs in there.' (Referencing the bag I had obtained from Melgoza's person)." 1-ER-30. "I immediately placed handcuffs on Melgoza and began escorting him to my patrol vehicle." 1-ER-30. "I secured Melgoza in the back of my patrol vehicle and began searching the bag." 1-ER-30.

Inside the bag, the officer found a handgun, ammunition, and methamphetamine. 1-ER-30. The officer then formally arrested Mr. Melgoza, who invoked his right to remain silent. 1-ER-31-32.[1] Following the arrest, the federal government took over the case. Based on the evidence found in Mr. Melgoza's bag, he was charged with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). 1-ER-15.

Mr. Melgoza moved to suppress the evidence against him, and the government opposed. 1-ER-18, 54. The parties' briefing focused on whether the officer had conducted a traffic stop, and if so, whether it was supported by reasonable suspicion. 1-ER-20-26, 54-61, 62-76. Additionally, Mr. Melgoza argued that, apart from the traffic stop issue,

---

[1] During a later records-check, the officer learned Mr. Melgoza was on active Post Release Supervision/Probation. 1-ER-30, 50.

5

"the officer's search [] violated the Fourth Amendment." 1-ER-76.

The district court held a short hearing on the motion but, with agreement of the parties, did not take any witness testimony or further evidence. 1-ER-80-99. After the hearing, the court issued a written order denying the motion to suppress. 1-ER-2.

It found, "the uncontradicted evidence is that Mr. Melgoza stopped without the officer making a traffic stop." 1-ER-5. The court explained, "the incident report clarifies that, though the officer intended to stop Mr. Melgoza, he did not do so because Mr. Melgoza stopped himself. Under this scenario Mr. Melgoza's Fourth Amendment rights were not implicated[.]" 1-ER-6. The court concluded, "the Fourth Amendment was [not] violated—or even implicated—by the officer stopping and asking the few questions." 1-ER-6.

Curiously, however, the court did not address the search itself. It noted in passing that the officer asked for consent to search Mr. Melgoza and Mr. Melgoza agreed, 1-ER-6, but the court did not evaluate the search of the bag in which the evidence was found. The court, for instance, did not grapple with the fact that Mr. Melgoza never expressly

consented to the search of the bag – as opposed to search of his person – or that the officer searched it only after he handcuffed Mr. Melgoza and locked him in the police car. Indeed, it seems the court overlooked this critical aspect of the Fourth Amendment inquiry.

Following the district court's decision, Mr. Melgoza entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress. 1-ER-106; *See* Fed. R. Crim. P. 11(a)(2) ("a defendant may enter a conditional plea of guilty . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea."). The district court sentenced him to 92-months in custody. This appeal follows.

## SUMMARY OF ARGUMENT

The Court should remand this case to the district court for a proper Fourth Amendment analysis in the first instance. The district court failed to analyze or decide whether the warrantless search of Mr. Melgoza's bag was permissible under the Fourth Amendment.

As a procedural matter, this error significantly impedes meaningful

appellate review.  Because the district court missed the determinative issue, the appellate record lacks appropriate factual findings and legal analysis.  This alone is reason to remand.

Additionally, as a substantive matter, the district court's analytical errors led it to the wrong result.  Although this Court need not reach the issue if it remands for further proceedings, the warrantless search of Mr. Melgoza's bag violated the Fourth Amendment.  The government bears the burden of proving an applicable exception to the warrant requirement, and on this record, it cannot do so.

## ARGUMENT

**The district court erroneously denied Mr. Melgoza's
motion to suppress the evidence obtained
from a warrantless search of his bag.**

## A.    Standard of review.

The Court reviews de novo the denial of a motion to suppress. *United States v. Lara*, 815 F.3d 605, 608 (9th Cir. 2016).  And as the Supreme Court has recently reaffirmed, "[o]nce a federal claim is properly presented, a party can make any argument in support of that

claim." *Hemphill v. New York*, 142 S. Ct. 681, 689 (2022).[2]

In other words, as this Court has long held, "claims, not arguments, are preserved [for] appeal." *United States v. Wahid*, 614 F.3d 1009, 1016 (9th Cir. 2010) (citing *United States v. Guzman-Padilla*, 573 F.3d 865, 877 n.1 (9th Cir. 2009)). "Once a federal claim is properly presented . . . parties are not limited to the precise arguments they made below." *United States v. Williams*, 846 F.3d 303, 311 (9th Cir. 2017).

Here, at the district court level, Mr. Melgoza's claims included that "the search carried out by the officer violated the Fourth Amendment and the evidence obtained as a result of this search must be suppressed." 1-ER-75." Accordingly, that claim was sufficiently preserved, and review remains de novo regardless of the precise supporting arguments he now raises.

However, even if the Court decides that plain error review applies, this should not impact the result. As demonstrated below, the district court's flawed Fourth Amendment analysis amounted to a "clear or

---

[2] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

obvious error that affected the defendant's substantial rights and that seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Cabrera*, 222 F.3d 590, 595-96 (9th Cir. 2012).

**B.      The warrantless search was unconstitutional.**

This case can be decided on first principles.    The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.

The second clause of the Amendment gives rise to what is commonly called the warrant requirement.    As the name suggests, the warrant requirement generally mandates that the police "get a warrant" before searching an individual's property.  *Riley v. California*, 573 U.S. 373, 403 (2014).  When they fail to do so, as here, the "analysis begins . . . with the basic rule that searches conducted outside the judicial process, without

prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment[.]" *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

Applying that principle to the facts of this case leads to a straightforward conclusion: The warrantless search of Mr. Melgoza's bag was per se unreasonable under the Fourth Amendment and thus violated his constitutional rights.

That clear violation comes with an equally clear remedy. "The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during [the] unlawful search." *Murray v. United States*, 487 U.S. 533, 536 (1998). This Court, therefore, should reverse the district court's erroneous denial of Mr. Melgoza's suppression motion, and vacate his conviction.

**C.  On this record, the government cannot meet its burden to justify the search under an exception to the warrant requirement.**

To avoid this result, the government may attempt to rely one or more "exceptions" to the warrant requirement, such as consent, search incident to arrest, probation search, etc. There are, however, two

11

problems with any such reliance. First, the government did not raise these exceptions below and the district court did not rule on them. Second, they fail on the merits.

1. <u>Because the record on the essential issue is undeveloped, the Court should remand to the district court for factual findings and analysis in the first instance.</u>

As to the first problem, there is blame to go around. An objective review of the record shows that everyone – the parties and the court – failed to focus on the warrantless search of the bag, as opposed to the traffic stop. While the government may fault the defense for failing to raise the issue more directly, it should be careful about throwing stones in its glass house.

"The government bears the burden to prove [a] warrantless search was justified by [an] exception to the Fourth Amendment's warrant requirement." *United States v. Wilson*, 13 F.4th 961, 971 (9th Cir. 2021). Thus, it was the government – not the defense – that was required to raise any Fourth Amendment exceptions.

Nor can the district court completely escape responsibility for its failure to address the relevant search issues. When it comes to criminal

12

law, "the trial court must be zealous to protect the rights of an accused." *Dennis v. United States*, 339 U.S. 162, 168 (1950). And the arresting officer's report (which was before the district court, 1-ER-30) should have raised red flags regarding the warrantless search.

To this end, as cited above, Mr. Melgoza did assert that "the search carried out by the officer violated the Fourth Amendment." 1-ER-75. So, the district court was on notice it needed to consider more than just the alleged traffic stop. But that never happened.

As a result, on the determinative issue in this appeal – the warrantless search of Mr. Melgoza's bag – the record is lacking in both factual findings and legal analysis. Fortunately, that deficiency has an easy solution. Indeed, this is not the first time an appeal has been hampered by the record below.

In *United States v. Wright*, 625 F.3d 583, 602 (9th Cir. 2010), the Court also faced a suppression issue that suffered from an insufficiently developed district court record. The Court explained, "[t]he absence of any factual findings by the district court considerably frustrates our appellate review." *Id.* And while review was "de novo, it [was]

13

nevertheless a fact-intensive inquiry." *Id.* As such, the Court created a commonsense remedy: "We reverse the denial of Wright's motion to suppress and remand with instructions to the district court to make essential factual findings explaining the basis for its decision." *Id.* at 604; *see also* Fed. R. Crim. P 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").

Similarly, in *Diouf v. Mukasey*, 542 F.3d 1222, 1235 (9th Cir. 2008), the district court did not adequately address one of the constitutional questions implicated in the case. Rather than trying to overcome that deficiency on appeal, the Court concluded: "[W]e do not believe it prudent to decide the question under these circumstances, we vacate the [challenged order] and remand so that the district court can decide [the issue] in the first instance, with possible additional fact-finding and more focused briefing from the parties[.]" *Id.*; *see also Ace Novelty Co. v. Gooding Amusement Co.*, 664 F.2d 761, 763 (9th Cir. 1981) ("The limited record here, coupled with the absence of findings of fact, complicates our determination . . . We therefore remand to the district court").

14

Here too, the Court would be entirely justified in remanding for the district court to decide in the first instance the issues raised by the warrantless search of Mr. Melgoza's bag "with possible additional fact-finding and more focused briefing from the parties." *Diouf*, 542 F.3d at 1235. To paraphrase *Diouf*, this seems the most prudent course of action, a point that becomes evident based on the substantive arguments below.

    2.    <u>On this record, there is no applicable exception to the warrant requirement</u>.

    a.    *Consent*.

Moving to those arguments, the government may respond that the warrantless search was justified by Mr. Melgoza's consent. But any such argument founders on scope.

"[A] search pursuant to consent is limited by the extent of the consent given for the search by the individual." *United States v. Lopez-Cruz*, 730 F.3d 803, 810 (9th Cir. 2013). Thus, "[i]t is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given." *Id.* at 809.

Here, the officer stated, "I asked Melgoza if I could search *him* and

he said yes." 1-ER-30. The officer, however, never asked Mr. Melgoza for consent to search his bag. As an objective matter, a person and his bag are not the same. The scope of the search, therefore, exceeded Mr. Melgoza's consent. *Cf. Lopez-Cruz*, 730 F.3d at 810 (holding that consent to search a phone did not extend to answering incoming calls). Thus, the consent exception cannot apply.

This is equally true because, independent of the scope issue, the consent resulted from an improperly prolonged detention. *See United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001), opinion amended by 279 F.3d 1062 (9th Cir. 2002), overruled on other grounds by *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005).

Assuming solely for the sake of argument that there was no initial traffic stop and thus no Fourth Amendment seizure at the outset, circumstances quickly changed. After pulling behind Mr. Melgoza, the officer "immediately activated [his] red and blue lights[.]" 1-ER-30. The officer then saw Mr. Melgoza's ankle monitor and asked if he was on probation. 1-ER-30. Mr. Melgoza answered that he was on probation for a drug offense. 1-ER-30. Critically, all of this happened *before* the officer

16

asked for consent to search. 1-ER-30.

On these facts – police lights activated while being questioned about probationary status and prior convictions – a reasonable person in Mr. Melgoza's position would not have felt free to leave. *See Chavez-Valenzuela*, 268 F.3d at 724. As this Court has explained, when an officer asks a question implying that he suspects the individual of potential criminal activity, "a reasonable motorist . . . most likely would not have believed he could disregard the officer's inquiry and end the conversation." *Id.* at 725. This is legally significant because "[a]n encounter is not consensual if a reasonable person would have believed he was not free to leave." *Id.* at 724.

Thus, once the officer activated his emergency lights and began asking questions about criminal history, the encounter was no longer consensual; Mr. Melgoza was detained. *See id.* And because, at that point, nothing had happened to give the officer further reasonable suspicion of criminal activity sufficient to continue the encounter, he

could not lawfully do so.[3] *See id*. at 725-26. But he did.

Under the Fourth Amendment, this continuation constituted an unconstitutionally prolonged detention, which "tainted" any subsequent consent. *Id.* at 727. Accordingly, because Mr. Melgoza's consent "was the fruit of an unlawful detention and questioning [it] cannot validate the search." *Id.* at 728.

> b. *Search incident to arrest.*

Nor can the government rely on the search incident to arrest exception. Even ignoring the fact that Mr. Melgoza was not yet under arrest at the time of the search, the most salient fact is that he was handcuffed and locked in a police car when the officer opened his bag. As a matter of law, this was not a search incident to arrest.

Under *Arizona v. Gant*, 556 U.S. 332, 339 (2009), a valid search incident to arrest "may only include the arrestee's person and the area

---

[3] The fact that person is on probation does not provide reasonable suspicion of criminal activity. *See United States v. Knights*, 534 U.S. 112, 121-22 (2001) (explaining that people on probation cannot be searched without further individualized suspicion.).

within his immediate control . . . [meaning] the area from within which he might gain possession of a weapon or destructible evidence." "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search . . . the rule does not apply." *Id.*

As the Supreme Court has explained, "[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *United States v. Chadwick*, 433 U.S. 1, 15 (1977), overruled on other grounds by *California v. Acevedo*, 500 U.S. 565, 571 (1991).

That is precisely the situation here. According to the police report, "I immediately placed handcuffs on Melgoza and began escorting him to my patrol vehicle . . . . I secured Melgoza in the back of my patrol vehicle and began searching the bag." 1-ER-30. Plainly, under these facts, there was no danger of Mr. Melgoza accessing his bag *after* he was handcuffed and locked in a police car. Accordingly, the search cannot be justified as

19

incident to arrest.

    c.    *Probation search.*

The government may also claim – again, for the first time on appeal – the search was permissible based on Mr. Melgoza's probationary search condition, which stated: "You and your residence and any other property under your control may be searched without a warrant day or night by an agent of the supervising county or any peace officer or law enforcement officer." 1-ER-77.

The principal problem with relying on this condition, however, is that "[p]olice officers must know about a probationer's Fourth Amendment search waiver *before* they conduct a search in order for the waiver to serve as a justification for the search." *United States v. Job*, 871 F.3d 852, 859 (9th Cir. 2017). Otherwise said, "[a] Fourth Amendment search waiver cannot provide a justification for a search of a probationer where the officers were unaware of the waiver before they undertook the search." *Id.* at 860.

Here, as in *Job*, "[t]he district court did not determine whether the officers were aware of the search waiver before conducting the search[.]"

20

*Id.* at 859. Nor does the record answer the question. The arrest report says, "[d]uring a records check of Melgoza, Shafter Dispatch *later* confirmed that he was on active Post Release Supervision/Probation and searchable for narcotics and firearms." 1-ER-30. The word "later" likely refers to a check that occurred *after* the search and arrest.

In any event, at most, the report is ambiguous about the timing. And because the government bears the burden, on this undeveloped record, it cannot rely on Mr. Melgoza's probationary conditions to justify the search. *See Job*, 871 F.3d at 860 ("The government bears the burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement.").

What's more, even if the officer had known about the probation condition at the outset, it is not clear the condition would have justified the search.

"[A] probationer's acceptance of a search term in a probation agreement does not by itself render lawful an otherwise unconstitutional search of a probationer's person or property." *Lara*, 815 F.3d at 609. This is because "there is a limit on the price the government may exact in

return for granting probation. Specifically, any search made pursuant to the condition included in the terms of probation must necessarily meet the Fourth Amendment's standard of reasonableness." *Id.* "[T]o determine if the search was reasonable," the Court balances "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *Id.* at 610.

Plainly, such balancing is circumstance-specific and varies with the facts of each case. *See id.* Here, what little there is militates in favor of finding the search unreasonable.

"The extent to which the search intruded on [a probationer's] privacy depends on several factors," including "his status as a probationer" and "the clarity of the conditions of probation." *Id.* Here, as to the first factor, "while the privacy interest of a probationer has been significantly diminished, it is still substantial. The Supreme Court has recognized that a probationer's privacy interest is greater than a parolee's." *Id.* at 610. Thus, despite Mr. Melgoza's status as a probationer, his expectation of privacy remained robust.

22

As to the second factor, the condition left considerable ambiguity about its application. Many similar conditions specify the level of suspicion, if any, needed to trigger a search. In *Lara*, for instance, the condition provided in part: "I will submit my person and property . . . to search and seizure at any time of the day or night by any law enforcement officer, probation officer, post-release community supervision officer, or parole officer, *with or without a warrant, probable cause, or reasonable suspicion*." *Id.* at 607.

Here, however, the level of specificity was missing. The condition left both probationers, like Mr. Melgoza, and law enforcement to guess at the degree of necessary suspicion. *See id.* at 610 ("The Supreme Court [has] explained that a probationer's reasonable expectation of privacy is significantly diminished when the defendant's probation order *clearly expressed the search condition* of which the probationer was unambiguously informed."). Thus, this factor too cuts against a finding of reasonableness.

On the other side of the equation, "[p]robationary searches advance at least two related government interests — combating recidivism and

23

helping probationers integrate back into the community. These are important interests whose strength in a particular case varies depending on the degree to which the government has a specific reason to suspect that a particular probationer is reoffending or otherwise jeopardizing his reintegration into the community." *Id.* at 612.

Here, when the interaction began, the officer allegedly had some suspicion that Mr. Melgoza may have committed a minor traffic violation by failing to come to a full stop at a stop sign. [Of note, this is a dubious proposition given the video of Mr. Melgoza stopping, but for present purposes we will assume the officer somehow did not see him stop and was acting in good faith.] This alleged infraction, however, is "worlds away from [] suspected crimes" that would ordinarily increase the government's interest in conducting a warrantless search. *Id.*

While it is also true that, as the interaction continued, Mr. Melgoza made admissions regarding his criminal conduct, 1-ER-30, they cannot factor into the equation because they resulted from the improperly prolonged detention (as already discussed above). *See Chavez-Valenzuela*, 268 F.3d at 726.

24

Accordingly, when properly balanced, the government's limited interest did not outweigh Mr. Melgoza's substantial Fourth Amendment privacy protection. The government, therefore, cannot rely on the probation condition to justify the warrantless search. *See id*.

***

In summary, on this record, the government cannot rely on consent because: (1) Mr. Melgoza's consent did not expressly extend to his bag, and/or (2) his consent was tainted by the improperly prolonged detention. The government cannot rely on the search incident to arrest exception because Mr. Melgoza was handcuffed and locked in a police car when the officer searched his bag without a warrant. And the government cannot rely on the probationary search condition because: (1) there is no evidence the officer knew of the condition before the search, and/or (2) the condition did not render the search reasonable.

The search, therefore, was per se unreasonable under the Fourth Amendment.[4]

---

[4] Mr. Melgoza does not know what other exceptions, if any, the government may attempt to raise in its answering brief. He will of course

25

One final point.  Assuming for argument's sake that there was no prolonged detention and the officer had probable cause to arrest and search the bag, this should not materially impact the analysis or outcome of the case.  To the contrary, the existence of probable cause serves only to reinforce Mr. Melgoza's point: "if probable cause dispensed with the necessity of a warrant, one would never be needed."  *Walter v. United States*, 447 U.S. 649, 657 n.10 (1980).  In other words, "to excuse the failure to obtain a warrant merely because the officers had probable

---

address any such arguments in his reply brief.  That said, "[t]his court has never applied the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant."  *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir.1995).  Moreover, the *Terry* rubric cannot save the search for two reasons: the prolonged detention and because *Terry* authorizes only "a brief pat-down (or frisk) of an *individual*."  *United States v. Brown*, 996 F.3d 998, 1007 (9th Cir. 2021).  Finally, if the government attempts to rely on an "inventory search" policy, it cannot succeed because there is no such policy in the record.  *See United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989) ("to determine whether the evidence secured through [an] inventory searches . . . is admissible in federal court, we must determine whether the searches were conducted in accordance with the standard procedures of the [local police department].");  *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) (conditioning validity of inventory search on compliance with established police procedure).  This is yet another reason for remand.

26

cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the fourth amendment." *United States v. Young*, 573 F.3d 711, 723 (9th Cir. 2009).

Accordingly, regardless of probable cause, because the government failed to obtain a warrant, the search of Mr. Melgoza's bag violated the Fourth Amendment.

## <u>CONCLUSION</u>

The Court should reverse the district court's order denying Mr. Melgoza's motion to suppress and remand for further proceedings.

Respectfully submitted,

*s/ Devin Burstein*

Dated: December 30, 2022

Devin Burstein
Warren & Burstein

27

## <u>CERTIFICATE OF RELATED CASES</u>

Counsel is unaware of any related cases pending before this Court,

which should be considered in this appeal.

Respectfully submitted,

*s/ Devin Burstein*

Dated: December 30, 2022    Devin Burstein
Warren & Burstein
Attorneys for Defendant-Appellant

28

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 22-10276

I am the attorney or self-represented party.

**This brief contains 4,858 words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed.

R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/18*

[   ] complies with the length limit designated by court order dated
_____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R.
32-2(a).


**Signature**  *s/ Devin Burstein*       **Date** 12/30/2022
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                          *Rev. 12/01/18*

# ADDENDUM

Case: 22-10276, 12/30/2022, ID: 12620557, DktEntry: 6, Page 37 of 37

Amendment IV. Searches and Seizures; Warrants, USCA CONST Amend. IV-Search...

United States Code Annotated
    Constitution of the United States
        Annotated
            Amendment IV. Searches and Seizures; Warrants

U.S.C.A. Const. Amend. IV-Search and Seizure; Warrants

Amendment IV. Searches and Seizures; Warrants

Currentness

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for this amendment.>

U.S.C.A. Const. Amend. IV-Search and Seizure; Warrants, USCA CONST Amend. IV-Search and Seizure; Warrants
Current through P.L. 117-248. Some statute sections may be more current, see credits for details.

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.